No. 22-11789

---

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**SEAN SHEFFLER, et al.,**
**Plaintiffs-Appellants,**

**v.**

**AMERICOLD REALTY TRUST,**
**Defendant-Appellee.**

---

**On Appeal from the United States District Court for the Northern District of Georgia, The Honorable Timothy C. Batten, Civil Action No. 1:21-cv-01075-TCB**

---

**DEFENDANT-APPELLEE'S BRIEF**

---

Kristine McAlister Brown
Georgia Bar No. 480189
Gavin Reinke
Georgia Bar No. 159424
M. Ashley Miller
Georgia Bar No. 330929
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: 404-881-7000
Fax: 404-881-7777
kristy.brown@alston.com
gavin.reinke@alston.com
ashley.miller@alston.com

*Attorneys for Appellee Americold Realty Trust*

# <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
# <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-2, Appellee AMERICOLD REALTY TRUST (NYSE: COLD),[1] by and through its undersigned counsel, states that the list of trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock contained in the Certificate of Interested Persons in Plaintiff's Motion is complete.

No publicly held company owns 10% or more of Americold Realty Trust, Inc.'s (NYSE: COLD) stock.

---

[1] On May 25, 2022, Americold Realty Trust was converted from a Maryland real estate investment trust to a Maryland corporation, Americold Realty Trust, Inc.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee submits that oral argument is not necessary in this case, as the issues are uncomplicated, and the District Court's decision is well supported by this Court's precedent for multiple different reasons.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

STATEMENT OF THE CASE .................................................................................1

SUMMARY OF ARGUMENT .................................................................7

ARGUMENT AND CITATION TO AUTHORITIES ...........................................10

I.    The District Court Correctly Dismissed Plaintiffs' Amended Complaint. .10

    a.    The Applicable Law is that of Each Plaintiff's Home State. ...................10

    b.    The District Court's Conclusion That Plaintiffs Failed to State a Claim for Negligence Should Be Affirmed .....................................................................12

    c.    The District Court Properly Determined That Plaintiffs Failed to State a Claim for Breach of Implied Contract. ..........................................................22

II.    The District Court Acted Within Its Discretion and Clear Authority When It Denied Plaintiffs' Motion to Vacate and for Leave to Amend the Complaint Pursuant to Rule 59(e) or 60(b). .........................................................................25

    a.    The District Court Correctly Determined that Plaintiffs Have Not Satisfied Either Rule 59(e) or 60(b)'s Standards for Relief from Judgment. .................26

    b.    The District Court Acted Well Within Its Discretion in Holding that Plaintiffs Did Not Show Good Cause for Allowing Their Untimely Request to Amend. ............................................................................................................38

c.    Plaintiffs Did Not Meet Rule 15's More Liberal Standard for Pre-Judgment Amendment. ....................................................................43

CONCLUSION .......................................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3WL, LLC v. Master Protection, LP,*
  851 F. App'x 4 (9th Cir. 2021) ............................................................36

*ACA Fin. Guar. Corp. v. Advest, Inc.,*
  512 F.3d 46 (1st Cir. 2008) ..............................................................34

*Amendola v. Bayer,*
  907 F.2d 760 (7th Cir. 1990) .............................................................35

*AMG Trade & Distrib., LLC v. Nissan N. Am. Inc.,*
  813 F. App'x 403 (11th Cir. 2020) ....................................................41

*Annett Holdings, Inc. v. Kum & Go, L.C.,*
  801 N.W.2d 499 (Iowa 2011) ............................................................22

*Arthur v. King,*
  500 F.3d 1335 (11th Cir. 2007) .........................................................37

*Bank of Am., N.A. v. Jones,*
  2020 WL 10070318 (N.D. Ga. May 6, 2020)....................................38

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................................24

*Bonner v. City of Prichard,*
  661 F.2d 1206 (11th Cir. 1981) (en banc) ........................................28

*Brush v. Miami Beach Healthcare Grp. Ltd.,*
  238 F. Supp. 3d 1359 (S.D. Fla. 2017) .......................................23, 24

*Ciralsky v. CIA,*
  355 F.3d 661 (D.C. Cir. 2004)...........................................................36

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.,*
  863 F.3d 474 (6th Cir. 2017) .............................................................21

*CMR Constr. & Roofing, LLC v. UCMS, LLC*,
    2022 WL 3012298 (11th Cir. July 29, 2022) ....................................................34

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
    887 F.3d 803 (7th Cir. 2018) ........................................................13, 21

*Collins v. Athens Orthopedic Clinic, P.A.*,
    307 Ga. 555 (2019) ...........................................................14, 15, 17

*Cont'l W. Ins. Co. v. Cont'l Fire Sprinkler Co.*,
    2013 WL 12092291 (S.D. Iowa Mar. 27, 2013)................................................21

*Coon v. Med. Ctr., Inc.*,
    300 Ga. 722 (2017) ..............................................................11

*Cooper v. Shumway*,
    780 F.2d 27 (10th Cir. 1985) ...............................................36

*Czeremcha v. International Ass'n of Machinists and Aerospace Workers*,
    724 F.2d 1552 (11th Cir. 1984) ..............................................32, 33

*Department of Labor v. McConnell*,
    305 Ga. 812 (2019) ...........................................3, 12, 13, 14, 17, 19

*Donley v. City of Morrow, Ga.*,
    601 F. App'x 805 (11th Cir. 2015) ....................................................42

*In re Dredging Limitation Actions Consol. Litig.*,
    No. 06-8676, 2008 WL 11439340 (E.D. La. June 12, 2008) ............................44

*Dussouy v. Gulf Coast Inv. Corp.*,
    660 F. 2d 594 (5th Cir. 1981) ...................................................28, 29

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019).......................................................15, 44

*Foster v. Health Recovery Servs.*,
    493 F. Supp. 3d 622 (S.D. Ohio 2020) ............................................21

*Freeman v. Willie A. Watkins Funeral Home of Riverdale, Inc.*,
    2017 WL 836056 (N.D. Ga. Mar. 3, 2017) ..........................................34

*Gen. Elec. Co. v. Lowe's Home Ctrs.*,
    279 Ga. 77 (2005) .................................................22

*Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*,
    57 F. Supp. 3d 1389 (N.D. Ga. 2014).................21

*Higdon v. Fulton County*,
    746 F. App'x 796 (11th Cir. 2018) .....................30

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ..........................26

*Landale Signs & Neon Ltd. v. Runnion Equip. Co.*,
    2016 WL 7409916 (N.D. Ill. Dec. 22, 2016).......23

*LeFrere v. Quezada*,
    582 F. 3d 1260 (11th Cir. 2009) .........................12

*Leisure Caviar LLC v. U.S. Fish & Wildlife Serv.*,
    616 F.3d 612 (6th Cir. 2010) ..............................35

*Long v. Satz*,
    181 F.3d 1275 (11th Cir. 1999) ..........................27

*Longenecker-Wells v. Benecard Servs.*,
    658 F. App'x 659 (3d Cir. 2016) ........................23

*Mackey v. Belden, Inc.*,
    2021 WL 3363174 (E.D. Mo. Aug. 3, 2021).......25

*Marchelletta, v. Bergstrom*,
    2017 WL 5505301 (N.D. Ga. Feb. 15, 2017)......46

*Martinair Holland, N.V. v. Benihana, Inc.*,
    780 F. App'x 772 (11th Cir. 2019) .....................30

*Maynard v. Bd. of Regents of Univs. of Fla.*,
    342 F.3d 1281 (11th Cir. 2003) ..........................46

*In re Mednax Servs., Inc.*,
    2022 WL 1468057 (S.D. Fla. May 10, 2022)......23

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
  970 F.3d 133 (2d Cir. 2020) ...............................................................35

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  435 N.E.2d 443 (Ill. 1982) ...................................................................21

*Murray v. ILG Techs., LLC*,
  798 F. App'x 486 (11th Cir. 2020) ......................................................13

*Newman v. Total Quality Logistics, LLC*,
  2021 WL 1192669 (S.D. Ohio Mar. 30, 2021)....................................21

*\*OJ Com., LLC v. Ashley Furniture Indus., Inc.*,
  817 F. App'x 686 (11th Cir. 2020) ......................................................27

*Peterson v. Aaron's, Inc.*,
  2017 WL 364094 (N.D. Ga. Jan. 25, 2017)...................................10, 11

*Pioneer Metals, Inc. v. Univar USA, Inc.*,
  168 F. App'x 335 (11th Cir. 2006) ......................................................32

*Pisciotta v. Old Nat'l Bancorp*,
  499 F.3d 629 (7th Cir. 2007) ...............................................................16

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ...............................................................34

*Purvis v. Aveanna Healthcare, LLC*,
  563 F. Supp. 3d 1360 (N.D. Ga. 2021), Doc. 29 ......... 2, 3, 14, 16, 17, 18, 19, 44

*Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*,
  897 F. Supp. 1472 (S.D. Ga. 1995) .....................................................10

*Robbins v. Scana Energy Mktg., Inc.*,
  2008 WL 7724172 (N.D. Ga. July 30, 2008) ......................................29

*Sackin v. Transperfect Global, Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) .................................................25

*Sekisui SPR Am., LLC v. 9413-2990 Quebec Inc.*,
  2021 WL 3087657 (N.D. Ga. Jan. 11, 2021).......................................40

*Shuler v. Strange*,
    2017 WL 748515 (N.D. Ala. Feb. 27, 2017) ........................................................34

*\*Sosa v. Airprint Sys., Inc.,*
    133 F.3d 1417 (11th Cir. 1998) ...............................................................41, 42

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
    376 F.3d 1065 (11th Cir. 2004) ...............................................................30

*St. Louis Condo. Ass'n v. Rockhill Ins. Co.*,
    5 F.4th 1235 (11th Cir. 2021) ..................................................................38

*Stalzer v. S. Golf Partners, LLC v. Fed. Deposit Ins. Co.*,
    2012 WL 13006240 (N.D. Ga. June 21, 2012) .......................................42

*State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body*
    *Works, Inc.*,
    312 Ga. App. 756 (2011) .........................................................................15

*Tatum v. Moss,*
    58 Ga. App. 434 (1938) ...........................................................................23

*Taylor v. Royal Caribbean Cruises Ltd*.,
    2021 WL 148797 (S.D. Fla. Jan. 15, 2021) .....................................33, 37

*Thomas v. Cooper Lighting, Inc*.,
    506 F.3d 1361 (11th Cir. 2007) .........................................................21, 29, 30

*Thomas v. Farmville Mfg. Co.*,
    705 F.2d 1307 (11th Cir. 1983) ...............................................................31

*Thomas v. Town of Davie*,
    847 F. 2d 771 (11th Cir. 1988) ...............................................................28

*Trusted Data Sols., LLC v. Kotchen & Low, LLP*,
    2015 WL 11251959 (N.D. Ga. Feb. 5, 2015) .........................................11

*\*Tsavaris v. Pfizer, Inc*.,
    717 F. App'x 874 (11th Cir. 2017) .........................................................27

*United States v. Mask of Ka-Nefer-Nefer*,
    752 F.3d 737 (8th Cir. 2014) ...................................................................35

*United States ex rel. Atkins v. McInteer*,
  470 F.3d 1350 (11th Cir. 2006) ............................................................26

*Uzuegbunam v. Preczewski*,
  781 F. App'x 824 (11th Cir. 2019) ......................................................31

*Vanderberg v. Donaldson,*
  259 F.3d 1321 (11th Cir. 2001) ............................................................30

**Statutes**

O.C.G.A. § 10-1-912(a) ...........................................................................15

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, Federal Practice and
  Procedure § 1489 (1990)........................................................................33

Fed. R. Civ. P. 8 .......................................................................................36

Fed. R. Civ. P. 15 ...............................................................................passim

Fed. R. Civ. P. 16 .......................................................................40, 52, 46

Fed. R. Civ. P. 59 ...............................................................................passim

Fed. R. Civ. P. 60 ...............................................................................passim

## **STATEMENT OF THE CASE**

### I.    **Factual and Procedural Background**

Plaintiffs are residents of Ohio, Georgia, Illinois, and Iowa who allege they worked for Americold "or its subsidiary" at different points in time over the last ten years.  Doc. 16 (Am. Compl.) ¶¶ 14-17, 63, 73, 82, 93.[2]  Plaintiffs base their claims on a notice they received from Americold in March 2021, informing them that their personal information may have been accessed in a third-party criminal ransomware attack perpetrated against Americold's computer network (the "Cyberattack").  *Id.* ¶ 6.  "As a precaution" to protect from potential harm that could result from the Cyberattack, Americold offered Plaintiffs and other potentially impacted individuals two years of identity theft detection services at no charge and "assistance in resolving any identity theft that does occur."  *Id.* ¶ 61; Doc.16-3 (Ex. 3 to Am. Compl.) at 3.

On March 16, 2021, Plaintiff Sean Sheffler filed the instant action, asserting claims for negligence, breach of implied contract, invasion of privacy, and breach of confidence based on the Cyberattack.  Doc. 1.  On June 7, 2021, Americold moved to dismiss the Complaint.  Doc. 12.  Rather than respond to that motion, Plaintiff

---

[2] Pursuant to 11th Cir. R. 28-5, Americold cites to the document and page number (or paragraph number, where appropriate) in its citations to the record.  The page numbers correspond to the header generated by the District Court's electronic filing system at the time of filing.  Similarly, citations to the Appellant's Opening Brief ("App. Br.") correspond to the page numbers on the header generated by this Court's electronic filing system at the time of filing.

Sheffler amended his complaint, attempting to cure the deficiencies raised in Americold's motion and also adding three Plaintiffs— Ty Baugh, Belinda Goss, and Travis Rogers—to the litigation.  Doc. 16 (Am. Compl.).  The Amended Complaint, which was filed on June 22, 2021, asserted the same claims as the original complaint, was based on the same legal theories, and contained the same defects as the original.

As Plaintiffs failed to cure the deficiencies Americold previously identified, on July 6, 2021, Americold again moved to dismiss on the same grounds as its initial motion.  Doc. 18.  Plaintiffs responded to that motion[3] on October 20, 2021, and Americold replied on November 3, 2021.  Doc. 27.  On November 11, 2021, while Americold's motion to dismiss was still pending, Plaintiffs moved for leave to file a surreply, which, as relevant to the issues in this appeal, discussed a decision from the Northern District of Georgia, *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021), Doc. 29, that Plaintiffs could have, but failed to, include in their initial response brief.  The District Court allowed Plaintiffs to file the surreply.  Doc. 31.

## II.    The District Court's Dismissal Order

On January 19, 2022, the District Court granted Americold's Motion to Dismiss, holding that Plaintiffs failed to allege a single claim upon which relief could

---

[3] Plaintiffs expressly abandoned their claims for invasion of privacy and breach of confidence in their response.  Doc. 27 at 19 ("Plaintiffs withdraw their invasion of privacy and breach of confidence claims (Counts III and IV).").

be granted.  Doc. 33.  The Parties disputed which states' laws governed their claims, with Plaintiffs seeking to apply Georgia law across all the claims, and Americold contending that each Plaintiff's claims were governed by the state of their residence. The District Court concluded that "the result is same under either side's choice—the claims must be dismissed."  Doc. 33 at 14.

### a. Negligence

With respect to the negligence claim, the District Court found that Plaintiffs had not stated a plausible claim under any applicable state's law because Plaintiff failed to establish a duty to protect against a criminal ransomware attack.  Doc. 33 at 14-18.  Beginning its discussion with Georgia law, the Court held that the issue of duty had been resolved by the Georgia Supreme Court in *Department of Labor v. McConnell,* 305 Ga. 812, 815-16 (2019), when it dismissed a negligence claim predicated on the unauthorized disclosure of personal information, finding that the plaintiff had not adequately alleged a duty to safeguard that personal information from a negligent disclosure.  Doc. 33 at 15.  The Court then concluded that Plaintiffs' surreply citation of *Purvis* also did not support the existence of a duty under Georgia law.  *Id.*  Though that case allowed a negligence claim to proceed under Georgia law with a general duty based on foreseeability, the District Court found that *Purvis* did not support a duty here because Plaintiffs had not plausibly alleged that the ransomware attack was foreseeable to Americold.  *Id.* at 16-17.

3

The District Court then went on to consider the other potentially applicable states' laws and held that they too did not recognize a claim for negligence in this situation. The Court began by noting that Plaintiffs had not even responded to Americold's arguments with respect to Illinois, Ohio, and Iowa law. Nevertheless, the Court analyzed the case law of those states and concluded that they did not recognize a duty to protect against a ransomware attack on the facts alleged by Plaintiffs. *Id.* at 17-18. The Court also rejected Plaintiffs' attempt to impose a duty, under any state's laws, based on an alleged failure to notify (particularly because Plaintiffs were, in fact, notified) or Section 5 of the FTC Act (which does not apply in the employer/employee context). *Id.* at 18.

### b. *Breach of Implied Contract*

The District Court then proceeded to dismiss Plaintiffs' claim for breach of implied contract, holding that, under the law of any potentially applicable state, Plaintiffs must allege a meeting of the minds on the data security requirements they seek to impose. Doc. 33 at 18-19 (citing cases from Georgia, Illinois, Ohio, and Iowa). Specifically, the District Court held that "[e]ach Plaintiff must allege facts to allow a plausible inference that Americold intended to bind itself to protect such Plaintiff's information." *Id.* at 20. The District Court found that Plaintiffs' allegation that they were required to provide their personal information to Americold

4

was not sufficient to show that Americold agreed to protect that information against a criminal ransomware attack.  *See id.* at 19.

Having dismissed both claims, the Court then directed the Clerk to close the case.  *Id.* at 20.  The Clerk entered judgment in Americold's favor later that same day.  Doc. 34.

### III.    Plaintiffs' Untimely Request for Leave to Amend

On February 16, 2022, Plaintiffs filed a Motion to Vacate Order of Dismissal and Judgment and for Leave to File Amended Complaint Under Rules 59(e) and 60(b).  Doc. 35.  Though Plaintiffs styled their motion as seeking relief under Rules 59(e) and 60(b), they did not even attempt to argue that they satisfied the requirements of those rules that would authorize relief from a judgment.  *See generally id.*  Instead, Plaintiffs argued that, because they were seeking leave to file an amended complaint, they could bypass the requirements of Rules 59(e) and 60(b) and instead obtain post-judgment relief under Rule 15, which they cast as imposing liberal standards for amendment.  The District Court denied the motion on April 21, 2022, for two independent reasons: (i) Plaintiffs failed to establish grounds for post-judgment relief under Rules 59(e) and 60(b); and (ii) Plaintiffs' request for leave to amend was untimely under the Court's scheduling order, and Plaintiffs had not established good cause for their failure to comply with the Court's deadline.

First, the Court held that Plaintiffs failed to establish grounds for post-judgment relief under Rule 59(e) or 60(b).  The Court explained that Plaintiffs must first establish grounds for reopening the case under those Rules before proceeding to consider whether an amendment should be allowed under Rule 15.  *Id.*  at 11.  The Court held that Plaintiffs failed to even attempt to meet the stringent requirements for relief from a judgment, and therefore were not entitled to seek post-judgment leave to amend their complaint.  *Id.*

Second, with respect to timeliness, the Court held that Plaintiffs were required to show good cause for seeking leave to amend several months after the August 6, 2021, deadline set forth in the parties' Joint Preliminary Report and Discovery Plan, which was adopted and entered by the Court in its Scheduling Order.  *Id.* at 11-12.  The Court found that Plaintiffs had not satisfied the good cause standard because they did not show due diligence in seeking amendment.  *Id.* at 12.

Plaintiffs filed a notice of appeal on May 20, 2022.  Doc. 40.  Plaintiffs appeal both the dismissal of their Amended Complaint and the Court's denial of their post-judgment request for leave to file a second amended complaint out-of-time.

## **SUMMARY OF ARGUMENT**

The District Court properly dismissed Plaintiffs' Amended Complaint. Plaintiffs based their negligence claim on an alleged breach of a duty to safeguard data. But the District Court properly found that the duty Plaintiffs invoke does not exist under any of the potentially relevant states' laws.[4] Beginning with Georgia law, the District Court correctly predicted that the Georgia Supreme Court would not recognize a duty to safeguard data from a criminal ransomware attack under the circumstances alleged in the Amended Complaint. The District Court also properly concluded that the result would be the same under Illinois, Ohio, and Iowa law.

Moreover, though the District Court did not reach the issue, Plaintiffs' negligence claim fails for the independent reason that it runs afoul of each of their home states' economic loss rules, which prevent recovery in tort for purely economic damages like the ones Plaintiffs assert. *See* Doc. 18-1 at 21 (citing cases applying

---

[4] Under Georgia's choice-of-law rules, Plaintiffs' claims are governed by the laws of their respective home states—Georgia for Goss, Illinois for Rogers, Ohio for Sheffler, and Iowa for Baugh. *See* Doc. 18-1 at 14-15. In the District Court, Plaintiffs Rogers, Sheffler, and Baugh did not even address the viability of their claims under their home states' laws. Instead, Plaintiffs simply assumed that all of their claims are governed by Georgia law. The District Court analyzed all of the potentially applicable states' laws and found that the result would be the same under any of the relevant states' laws—Plaintiffs failed to state a plausible claim for relief. Americold maintains that each Plaintiff's claims are governed by their home states' laws.

Georgia, Illinois, Ohio, and Iowa law). This is an independent basis for affirming the dismissal of Plaintiffs' negligence claim.

The District Court also rightly held that Plaintiffs failed to allege facts to support an indispensable element of their implied contract claim, a meeting of the minds. Under any of the potentially applicable laws, Plaintiffs could not manufacture a contract to safeguard their personal information from a criminal ransomware attack based only on their subjective and one-sided beliefs.

The District Court also acted well within existing authority and its discretion when it denied Plaintiffs' post-judgment request for a third bite at the apple. The District Court denied Plaintiffs' request for two independent reasons, each of which were sufficient to preclude Plaintiffs' request for relief.

*First*, the District Court held that Plaintiffs must establish grounds for setting aside the judgment under Rules 59(e) or 60(b) before their request for leave to amend could be considered. Plaintiffs made no effort to meet Rules 59(e) or 60(b), and the Court was squarely within its discretion in finding Plaintiffs failed to carry a burden they did not even try to satisfy.

*Second*, the Court noted that the deadline to amend the pleadings under the scheduling order the Court had entered was August 6, 2021. Plaintiffs did not seek leave to amend until February 16, 2022— more than six months after that deadline. Thus, Plaintiffs were required to show good cause for failing to comply with the

scheduling order.  They did not do so.  Plaintiffs made a tactical decision to wait out the Court's ruling on the motion to dismiss instead of including all available facts in their Amended Complaint (or seeking leave to amend within the deadline and prior to judgment).  The District Court did not abuse its discretion in requiring Plaintiffs to live with the consequences of that strategic choice.

For these reasons, and those discussed below, the District Court's Orders granting Defendants' motion to dismiss and denying Plaintiffs' motion for relief from judgment should be affirmed.

## ARGUMENT AND CITATION TO AUTHORITIES

Plaintiffs failed to state a claim under their Amended Complaint and similarly failed to show any justification for relief from judgment sufficient to give them yet another attempt to state a claim.[5]

## I.    The District Court Correctly Dismissed Plaintiffs' Amended Complaint.

### a.    *The Applicable Law is that of Each Plaintiff's Home State.*

The District Court held that Plaintiffs' claims fail under all of the potentially relevant states' laws.  Plaintiffs do not spend a word of their Appellants' Brief discussing Illinois, Ohio, or Iowa law, which also support and underlie dismissal of their claims.  Instead, they choose to focus exclusively on Georgia law, without any discussion or explanation of why that state's laws would govern the non-Georgia Plaintiffs' claims.  Based on application of Georgia's choice of law rules, the law of each Plaintiffs' home state is the correct standard.

For negligence claims, Georgia follows the doctrine of *lex loci delicti*, which applies to the law of the place where the alleged injury was suffered.  *See Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc*., 897 F. Supp. 1472, 1476 (S.D. Ga. 1995), *aff'd*, 133 F.3d 1405 (11th Cir. 1998); *Peterson v. Aaron's, Inc*., 2017 WL 364094, at *5

---

[5] Americold agrees with Plaintiffs' statement of the standards of review.

(N.D. Ga. Jan. 25, 2017).[6]  Plaintiffs, as residents of Georgia, Illinois, Ohio, and Iowa, suffered their alleged harm in those states.

For contract-based claims, Georgia applies the law of the place of contracting. *See Trusted Data Sols., LLC v. Kotchen & Low, LLP*, 2015 WL 11251959, at *3 (N.D. Ga. Feb. 5, 2015).  Plaintiffs alleged that they worked for Americold or a subsidiary in Georgia (Goss), Illinois (Rogers), Ohio (Sheffler), and Iowa (Baugh) and that "[a]s a condition of employment," Americold required that they provide their PII, including name, Social Security number, date of birth, and health/medical insurance information.  Doc. 16 (Am. Compl.) ¶¶ 63, 73, 82, 93.  Thus, any contract associated with the provision of Plaintiffs' PII was formed in the states in which they provided their information—e.g., the states where they resided and were employed—and is governed by those states' laws.

---

[6] *Lex loci delicti* is the default rule in Georgia.  But if the claim does not involve any other state's statute, Georgia has a limited exception where it will apply its own common law instead of the law of state where the injury was felt "if the other state was one of, or formed from the territory of one of, the original 13 colonies that inherited the common law of England."  *See Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 731 n.5 (2017).  That limited exception does not apply for the Plaintiffs who do not live in Georgia for two reasons.  First, Plaintiffs were injured (if at all) in their home states, and none of those states was formed from the territory of one of the original 13 colonies.  Second, application of Georgia law is only constitutionally permissible where Georgia has a "significant contact or significant aggregation of contacts" to the Plaintiffs' claims, "contacts creating state interests, in order to ensure that the choice of Georgia law is not arbitrary or unfair."  *See Peterson*, 2017 WL 364094, at *6 (alteration omitted).  The out-of-state Plaintiffs fail to identify a single connection between their claims and Georgia beyond the location of Americold's corporate headquarters, which is insufficient.  *See id.*

**b. The District Court's Conclusion That Plaintiffs Failed to State a Claim for Negligence Should Be Affirmed.**

The District Court correctly dismissed Plaintiffs' negligence claim, holding that there is no common law duty to safeguard information form a ransomware attack under the circumstances alleged in the Amended Complaint under any of the potentially applicable states' laws. Additionally, the District Court's dismissal should be affirmed for an alternative reason not reached by the Court—the economic loss rule in each of the Plaintiffs' home states bars their claims for negligence.

> *1. The District Court Correctly Held That Plaintiffs Have Not Plausibly Alleged a Duty to Safeguard Personal Information from a Criminal Cyberattack under Georgia law.[7]*

"[S]tate supreme courts are the final arbiters of state law." *LeFrere v. Quezada*, 582 F. 3d 1260, 1262 (11th Cir. 2009). The Georgia Supreme Court has considered the question of whether there is a duty to safeguard personal information from a data breach in only one case, *Department of Labor v. McConnell*, 305 Ga. 812 (2019). That case involved a situation in which an employee of the Georgia Department of Labor inadvertently sent an e-mail with a "spreadsheet containing the name, social security number, home telephone number, e-mail address, and age" of thousands of individuals who had applied for unemployment benefits. *Id.* at 812.

---

[7] Plaintiffs have abandoned their arguments below seeking to impose a duty based on an alleged failure to notify or violation of Section 5 of the FTC Act by failing to appeal the District Court's rejection of these arguments.

The plaintiff, whose personal information was included in the spreadsheet, sued the Department of Labor for negligence. *Id.* at 813. The Georgia Supreme Court affirmed the dismissal of the negligence claim, finding that the plaintiff "has not shown that the Department owed him or the other proposed class members a duty to protect their information against negligent disclosure." *Id.* at 816.

Plaintiffs ask this Court to ignore *McConnell* because they contend that it left open the possibility that a duty could arise from a source the Court did not consider. App. Br. at 21. But Plaintiffs have no answer for the fact that the *only* guidance from the Georgia Supreme Court on the issue of duty in a case involving the alleged negligent disclosure of personal information is *McConnell*, and that case declined to recognize such a duty. Indeed, as this Court has previously stated, the Georgia Supreme Court's decision in *McConnell* "seriously calls into question the existence under Georgia law of an independent common-law duty to safeguard and protect personal information." *Murray v. ILG Techs., LLC*, 798 F. App'x 486, 492 (11th Cir. 2020) (alteration, internal quotation marks, and citation omitted); *see also Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 819 (7th Cir. 2018) (finding that a Georgia federal district court's decision recognizing a negligence duty in a data breach case "was based on a prediction of Georgia law that seems to have been incorrect").

Plaintiffs seek to avoid the clear import of *McConnell* by arguing that Georgia Supreme Court's decision in *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555 (2019) "cabined" *McConnell* to a narrower holding and supports a duty of care when the defendant knows of a foreseeable risk to its data systems.  App. Br. at 21-22.  But *Collins* says no such thing.  *Collins* addressed the issue of whether the plaintiff had plausibly alleged a legally cognizable injury.  *Collins,* 307 Ga. at 557.  It did not consider whether the plaintiff had adequately alleged a duty to safeguard personal information from a data breach—expressly leaving the duty question "for another day"—because "the Court of Appeals's decision did not turn on this issue."  *Id.* at 563.  Far from "implicitly presum[ing]" a duty as Plaintiffs suggest, App. Br. at 22, the *Collins* Court acknowledged that establishing breach of duty was "a more difficult showing" than establishing a legally cognizable injury.[8]  *Collins*, 307 Ga. at 562.  And the Court in *Collins* suggested that whether a duty ultimately exists is a matter that "may well be better resolved by the legislative process."  307 Ga. at 563 n.7.  Against this backdrop, Plaintiffs are wrong to read *Collins* as saying anything at all about the existence of a duty to protect against a criminal ransomware attack.

---

[8] Indeed, the primary case on which Plaintiffs rely in their Appellants' brief found that "*Collins* does not . . . implicitly presume that a healthcare provider has a duty to safeguard personal information."  *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1368 (N.D. Ga. 2021).

Even more fundamentally, the *Collins* Court suggested the legislative process may need to resolve the issue of duty, and the legislature has not recognized a duty. Georgia's legislature has spoken on data breach matters by enacting a statute that requires "[a]ny information broker or data collector that maintains computerized data that includes personal information of individuals" to "give notice of any breach of the security of the system." O.C.G.A. § 10-1-912(a).[9] But the legislature did not grant individuals whose personal information was exposed in a data breach the ability to bring a private right of action to sue the company that was breached. *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1342 (N.D. Ga. 2019) (dismissing claim under Georgia's data breach notification statute because "no private right of action exists"); *see also State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body Works, Inc.*, 312 Ga. App. 756, 761 (2011) (holding that the "absence of language in [a statute] creating a private right of action strongly indicates the legislature's intention that no such cause of action be created by said statute") (internal quotation marks omitted). Presented with analogous circumstances, another federal appellate Court has held that the legislature's decision not to create a private right of action weighs against finding a duty, explaining:

---

[9] Apart from notice this requirement, the Georgia legislature chose not to impose any requirements for a company's cybersecurity program.

15

> Had the . . . legislature intended that a cause of action should be available against a database owner for failing to protect adequately personal information, we believe that it would have made some more definite statement of that intent.  Moreover, given the novelty of the legal questions posed by information exposure and theft, it is unlikely that the legislature intended to sanction the development of common law tort remedies that would apply to the same factual circumstances addressed by the statute.

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 637 (7th Cir. 2007).  Here, too, both the Georgia legislature and the Georgia Supreme Court have declined to recognize the duty that Plaintiffs seek to create.  Under these circumstances, the District Court correctly dismissed Plaintiffs' negligence claim because they had not adequately alleged a duty.

Plaintiffs' answer to the lack of any Georgia Supreme Court authority recognizing the duty under which they seek to proceed is a single decision from the Northern District of Georgia, *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021).[10]  The plaintiffs in *Purvis* sued a healthcare provider for negligence, alleging that their personal information was compromised and unlawfully accessed in a data breach that impacted the healthcare provider.  The

---

[10] Plaintiffs also cite to three California federal court decisions where the Court found a duty of care in a data breach, arguing that "in similar situations, other courts have found that defendants owed plaintiffs a duty of reasonable care." App. Br. at 23-24.  But those are not "similar situations" at all.  In each of those cases, the courts applied California law, which undisputedly has recognized a common law duty to safeguard information from a data breach.  The same is not true for Georgia, Illinois, Ohio, or Iowa.

Court denied the defendant's motion to dismiss the negligence claim, finding that the plaintiffs had adequately alleged "a duty based on Defendant's alleged knowledge of the foreseeable risk of a data breach and the resulting exposure of Plaintiffs' information." *Id.* at 1368.  The Court emphasized that the plaintiffs had "allege[d] that the threat of cyberattacks and data breaches was widely and publicly known, especially to healthcare providers such as Defendant," that "the kind of phishing attack allegedly used in the Data Breach is extremely common, and that such attacks can be reasonably guarded against with a variety of preventative measures," and that "as a healthcare provider, Defendant knew or should have known that it faced a particularly high risk of a data breach." *Id.* at 1369.  Given these specific allegations about "the alleged foreseeability of this exact kind of harm," the Court found that the healthcare provider "owed Plaintiffs a duty to anticipate this harm and exercise reasonable care to guard against it." *Id.* at 1369-70.

Plaintiffs' reliance on *Purvis*, however, does not support the existence of a duty here for two reasons.  First, *Purvis* does not accurately predict how the Georgia Supreme Court would decide the duty question.  *Purvis* does not examine legislative intent, which the Georgia Supreme Court suggested was paramount in *Collins*, and the Georgia authority that it relies on does not arise in the data breach context and predates both *McConnell* and *Collins*.  *See Purvis*, 563 F. Supp. 3d at 1369-70.

17

Second, even if *Purvis* were an accurate prediction of how the Georgia Supreme Court would rule (and it is not), the District Court correctly concluded that Plaintiffs had not plausibly alleged a duty to safeguard their personal information from a data breach. The District Court examined *Purvis* in detail, noting that it "found a duty based on the plaintiffs' allegations of foreseeability of the data breach" because "the plaintiffs alleged that the attack was foreseeable because the defendant, a healthcare provider, had reason to know that it could be the target of the exact type of breach that it experienced" and because "[t]hey alleged that the specific type of phishing attack at issue was very common and could be guarded against." Doc. 33 at 16. As the District Court correctly held, unlike the plaintiffs in *Purvis*, Plaintiffs here did not include factual allegations that could plausibly support a foreseeability-based duty. Indeed, the Amended Complaint's only references to the foreseeability of the risk of a data breach appear in conclusory allegations. *See, e.g.,* Doc. 16 (Am. Compl.) ¶¶ 130-132, 147. Plaintiffs alleged nothing about why Americold should have foreseen that it would be subject to a criminal ransomware attack.

In their Appellants' Brief, Plaintiffs argue the District Court got the foreseeability analysis wrong, pointing to allegations in their Amended Complaint that say nothing about the facts and circumstances of this ransomware attack, but instead focus more generally on recommendations from third parties about how to prevent cyberattacks, generic "warnings" or "announcements" about unspecified

cybersecurity risks, or provide otherwise purely conclusory statements. *See* App. Br. at 25; Doc. 16 (Am. Compl.) ¶¶ 34, 35, 36, 37, 38, 42, 45, 46, 58, 60, 131, 132. These allegations are nothing like the non-conclusory, factual allegations the Court found sufficient in *Purvis*, which demonstrated that the defendant in that case "had reason to know—especially as a healthcare provider—that it could be the target of precisely the kind of criminal data breach it ultimately experienced." *Purvis*, 563 F. Supp. 3d at 1369.[11]

Plaintiffs also suggest that Americold owed a duty because Plaintiffs provided their sensitive personal information to it. App. Br. at 27. But that was equally true in *McConnell*. Plaintiffs seek to impose a duty that is sweeping in scope based on the idea that "any entity choosing to store" Social Security numbers or other sensitive data "has cause to be on guard against a ransomware attack." App. Br. at 27. But to reach that conclusion is irreconcilable with the Georgia Supreme Court's *McConnell* decision, which found no duty even though it was undisputed that the Georgia Department of Labor had possession of the plaintiff's Social Security number. 305 Ga. at 812. If Plaintiffs wanted to fit within the *Purvis* framework,

---

[11] Plaintiffs erroneously argue that the District Court essentially created a standard whereby the existence of duty depends on the defendant's industry. Not so. The District Court simply applied the logic of *Purvis*, which noted that because the healthcare industry is uniquely targeted, there were sufficient facts alleged to support a foreseeability-based duty. Plaintiffs did not offer facts to support such a conclusion for Americold, or any other basis to find a duty.

they were required to allege more. The District Court correctly concluded that Plaintiffs did not plausibly allege the existence of a duty under Georgia law and correctly dismissed Plaintiffs' negligence claim for that reason.

> ### 2. *The District Court Correctly Held That Plaintiffs Have Not Plausibly Alleged a Duty to Safeguard Personal Information from a Criminal Cyberattack under Illinois, Ohio, or Iowa Law.*

As referenced above, the negligence claims of Plaintiffs Rogers, Sheffler, and Baugh are governed by Illinois, Ohio, and Iowa law, respectively. *See* Argument Section I.a, *supra*. The District Court analyzed the negligence laws of those other states and concluded that—like Georgia—the Supreme Courts of those states had not recognized a duty to safeguard personal information from a data breach and there was no indication they would do so. Doc. 33 at 17-18. Plaintiffs did not appeal that finding and have waived any argument that a duty exists under these states' laws. The dismissal of the claims of Plaintiffs Rogers, Sheffler, and Baugh should be affirmed for this additional reason, as well.

> ### 3. *The Economic Loss Rule Bars Plaintiffs' Claims.*

The District Court did not reach Americold's economic loss rule argument, because Plaintiffs failed to allege a duty.[12] But under the right for any reason rule, this Court can affirm the District Court's decision on any ground that appears in the

---

[12] Americold argued in the District Court that the economic loss rules of Georgia, Illinois, Ohio, and Iowa bar Plaintiffs' negligence claims. *See* Doc. 18-1 at 21-22.

record. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (relying on a causation argument to affirm the district court, which was fully briefed by the parties but not addressed by the district court).

The economic loss rule provides yet another basis to affirm the dismissal of Plaintiffs' negligence claims. Under any potentially applicable state law, the economic loss rule "bars tort plaintiffs from recovering purely economic loss that 'do[es] not arise from tangible physical injury to persons or property.'" *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477 (6th Cir. 2017) (alteration in original); *Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*, 57 F. Supp. 3d 1389, 1395 (N.D. Ga. 2014); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 452 (Ill. 1982); *Cont'l W. Ins. Co. v. Cont'l Fire Sprinkler Co.*, 2013 WL 12092291, at *2-3 (S.D. Iowa Mar. 27, 2013). Plaintiffs do not allege physical injury or property damage, instead relying on vague/conclusory allegations of lost time, inconvenience, or identity theft.

Accordingly, the economic loss rule bars their claims for negligence. *See, e.g.*, *Newman v. Total Quality Logistics, LLC*, 2021 WL 1192669, at *6-7 (S.D. Ohio Mar. 30, 2021) (time spent monitoring bank accounts after data breach barred by Ohio's ELR); *Foster v. Health Recovery Servs.*, 493 F. Supp. 3d 622, 638 (S.D. Ohio 2020) (concluding that "monetary damages for expenditures on credit monitoring fall within the purview of the economic loss doctrine"); *Schnuck Mkts.*, 887 F.3d at

817 (Illinois ELR bars recovery in a data breach); *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011) (Iowa's ELR "bars recovery in negligence when the plaintiff has suffered only economic loss"); *Gen. Elec. Co. v. Lowe's Home Ctrs.*, 279 Ga. 77, 78 (2005) ("Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property . . . .").

### c. *The District Court Properly Determined That Plaintiffs Failed to State a Claim for Breach of Implied Contract.*

As the District Court correctly recognized, "[u]nder the law of any potentially relevant state, breach of implied contract requires a meeting of the minds." Doc. 33 at 18. Plaintiffs do not contest the District Court's conclusion that a meeting of the minds is a required element of their implied contract claims. Instead, they challenge the District Court's holding by arguing that implied contract claims must always be presented to the jury and noting that courts applying other states' laws have sometimes allowed breach of implied contract claims to proceed beyond a motion to dismiss. Neither position has any merit.

First, Plaintiffs urge this Court to find error because, in their estimation, implied contract claims should never be resolved on a motion to dismiss. But Plaintiffs' position ignores the fact that courts routinely dismiss implied contract claims at a motion to dismiss where, as here, the plaintiffs have not plausibly alleged a meeting of the minds with respect to the specific obligations that were allegedly

breached. *See Longenecker-Wells v. Benecard Servs.*, 658 F. App'x 659, 662 (3d Cir. 2016) (employer's requirement that employees provide PII prior to starting "did not create a contractual promise to safeguard that information, especially from third party hackers"); *In re Mednax Servs., Inc.,* 2022 WL 1468057, at *23 (S.D. Fla. May 10, 2022) ("Plaintiffs allege no invitation or solicitation by Defendants indicating that Defendants implicitly assented to secure their PHI and PII in exchange for remuneration"); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (dismissing breach of implied contract claim in data breach case where plaintiff failed to plausibly allege a meeting of the minds); *Landale Signs & Neon Ltd. v. Runnion Equip. Co.*, 2016 WL 7409916, at *7-8 (N.D. Ill. Dec. 22, 2016) (dismissing breach of implied contract claim based on an "implicit" agreement to safeguard financial information).

Plaintiffs cite the Georgia Court of Appeals' decision in *Tatum v. Moss* to argue that implied contract claims must be reserved for a jury, but *Tatum* did not apply the federal pleading standard and does not stand for the proposition they cite. There, the Court of Appeals was assessing whether to uphold or overturn a jury's verdict—it was not deciding, or opining on, a motion to dismiss for failure to state a claim. 58 Ga. App. 434 (1938). On top of that, *Tatum* dealt with an obviously fact-intensive implied contract issue—whether the provision of services was in return for payment or gratuitous. *Id.* at 434. Here, the issue is not whether Plaintiffs should

be required to pay for any services, it is whether Plaintiffs have plausibly alleged the threshold requirement of a meeting of the minds with respect to data security. Moreover, accepting Plaintiffs' position would violate the Supreme Court's instruction that courts cannot let "a claim just shy of a plausible entitlement to relief . . . be weeded out early in the discovery process," but must instead dismiss such a claim at the pleadings stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

Here, the District Court's ruling that Plaintiffs have not "allege[d] facts to allow a plausible inference that Americold intended to bind itself to protect such Plaintiff's information" was manifestly correct. Dkt. No. 33 at 20. Plaintiffs alleged only that they provided their information "as a condition of their employment." *See* App. Br. at 29; Doc. 16 (Am. Compl.) ¶¶ 156-57. They provided no facts to plausibly suggest that they reached contractual agreement with Americold about data security at all, let alone that they contracted for a particular level of data security or bargained for the prevention of a third-party criminal cyberattack. The absence of allegations that "give[] rise to a factual inference that the Defendants tacitly agreed to secure [the plaintiff's] personal data in exchange for remuneration" is fatal to a breach of implied contract claim. *Brush*, 238 F. Supp. 3d at 1369. The District Court's dismissal of Plaintiffs' breach of contract claim must be affirmed.

Second, the two cases cited by Plaintiffs (which do not apply any of the applicable laws here) are distinguishable. The Court allowed a breach of implied

contract claim to proceed to discovery in *Sackin v. Transperfect Global, Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017), because the complaint in that case expressly alleged terms in TransPerfect's security practices manual that stated that TransPerfect "maintains robust procedures designed to carefully protect the PII with which it [is] entrusted," which the court found could plausibly support an implied contract. Plaintiffs point to no such allegations here.[13] And in *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *8 (E.D. Mo. Aug. 3, 2021), the Court's decision was based on "the requirements for an implied-in-fact contract under Missouri law," which is not at issue here. The District Court's dismissal of Plaintiffs' threadbare breach of implied contract claim should be affirmed under all of the potentially relevant states' laws.

## II. The District Court Acted Within Its Discretion and Clear Authority When It Denied Plaintiffs' Motion to Vacate and for Leave to Amend the Complaint Pursuant to Rule 59(e) or 60(b).

Plaintiffs argue that they should have been permitted to file a second amended complaint after judgment was entered because, under Rule 15, leave to amend should

---

[13] In their post-judgment request to amend, Plaintiffs sought leave to amend their complaint and add a citation to an August 2021 Privacy Notice. As set forth below, even if this allegation had been included in the original complaint, it would not have changed anything. An implied contract is unique to each Plaintiff and depends upon the facts and circumstances of the interaction between the allegedly contracting parties. An August 2021 Privacy Notice would say nothing about agreements each Plaintiff made with Americold at the time of their employment in 2011 (Rogers), 2013 (Goss), 2013 (Baugh), or 2019 (Sheffler).

be freely granted.  But the District Court acted well within its discretion by denying

Plaintiffs' belated motion to amend for the reasons set forth below.

### a. *The District Court Correctly Determined that Plaintiffs Have Not Satisfied Either Rule 59(e) or 60(b)'s Standards for Relief from Judgment.*

Plaintiffs argue that the District Court abused its discretion by requiring

Plaintiffs to satisfy either Rule 59(e) or Rule 60(b) before permitting them to file a

Second Amended Complaint.  As discussed below, the District Court acted well

within the bounds of its direction in refusing to give Plaintiffs a third bite at the apple

to try to state a claim when they did not so much as attempt to meet Rule 59(e) or

60(b)'s standards.

### 1. *The District Court Properly Held that Plaintiffs Were Required to Satisfy Either Rule 59(e) or Rule 60(b) Before Amending Their Complaint.*

This Court has held on numerous occasions that "Fed. R. Civ. P. 15(a) has no

application once the district court has dismissed the complaint and entered final

judgment for the defendant.  Post-judgment, the plaintiff may seek leave to amend

if he is granted relief under Rule 59(e) or Rule 60(b)(6)."  *United States ex rel. Atkins*

*v. McInteer*, 470 F.3d 1350, 1361 n.22 (11th Cir. 2006); *Jacobs v. Tempur-Pedic*

*Int'l, Inc.*, 626 F.3d 1327, 1344-45 (11th Cir. 2010) (recognizing this same principle

and holding that, given *Atkins*, "we could hardly hold that the district court abused

its discretion in denying [plaintiff] leave to amend his complaint post-judgment");

*see also OJ Com., LLC v. Ashley Furniture Indus., Inc.*, 817 F. App'x 686, 693 (11th Cir. 2020) (similar); *Tsavaris v. Pfizer, Inc.*, 717 F. App'x 874, 876-77 (11th Cir. 2017) (district court does not abuse its discretion in denying a post-judgment motion to amend where the plaintiff fails to present "newly-discovered evidence that supported her claim or manifest errors of law or fact in the judgment" and only raises arguments "that could have been raised prior to the entry of judgment" (alteration, internal quotation marks, and citations omitted)). Here, Plaintiffs do not—and cannot—dispute that they did not seek leave to amend their Amended Complaint until after the Court had already entered judgment in Americold's favor.[14] Accordingly, this Court's precedent required Plaintiffs to satisfy the requirements for obtaining relief from a judgment under Rules 59 or 60 before seeking leave to file a Second Amended Complaint.

---

[14] Plaintiffs included a single sentence in their opposition to Americold's motion to dismiss that said: "In the event the Court grants any portion of the motion, Plaintiffs respectfully request an opportunity [to] amend the complaint." Doc. 27 at 26. Under this Court's precedent, "[f]iling a motion is the proper method to request leave to amend a complaint." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). A "request for leave to amend . . . included in the memorandum [plaintiff] filed in opposition to the motion to dismiss" is insufficient and "precludes the plaintiff's argument on appeal that the district court abused its discretion by denying her leave to amend her complaint." *Id.* at 1279-80.

> 2. *The District Court Correctly Rejected The Cases Plaintiffs Cite to Argue That They Need Not Satisfy Rule 59 or 60's Requirements.*

Plaintiffs attempt to inject confusion into the clear precedent discussed above by citing a string of older cases beginning with the Fifth Circuit's decision in *Dussouy v. Gulf Coast Inv. Corp.*, 660 F. 2d 594 (5th Cir. 1981) and this Court's decision in *Thomas v. Town of Davie*, 847 F. 2d 771 (11th Cir. 1988) that they say stand for the principle that "when a party moves pursuant to Rule 59(e) or Rule 60(b) to rectify pleading issues through proposed amendments, Rule 15(a)'s lenient standard should govern the decision whether to grant leave to amend post-dismissal." App. Br. at 37. Plaintiffs then argue that under the "'earliest case' rule," the District Court was "bound to follow *Dussouy*" because it is the earliest binding precedent that addresses this rule. App. Br. at 40.

Plaintiffs are wrong. As an initial matter, *Dussouy* is not binding precedent of this Court. In *Bonner v. City of Prichard*, this Court adopted as binding precedent "the decisions of the United States Court of Appeals for the Fifth Circuit, ***as that court existed on September 30, 1981, handed down by that court prior to close of business on that date.***" 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (emphasis added). *Dussouy* was decided on November 5, 1981, and therefore is not binding Eleventh Circuit precedent.

Moreover, neither *Dussouy* or *Thomas* address the question that Plaintiffs' appeal presents—whether a plaintiff who chooses not to seek leave to amend a complaint until after a judgment is entered is required to satisfy the requirements of Rules 59 or 60 in order to obtain leave to file an amended complaint post-judgment. As Judge Martin explained when she was on the district court:

> Plaintiffs' argument that Federal Rule of Civil Procedure 59's standards are irrelevant on a post-judgment motion to amend misinterprets these holdings. In *Dussouy,* the trial court, *having denied leave to amend,* was faced with a motion to reconsider that decision post-judgment. In deciding whether it had clearly erred in denying leave to amend, a court would necessarily look to the Rule 15 standard. If the decision not to permit amendment was clearly contrary to that standard, the plaintiff would be entitled to relief from the judgment under Rule 59. Likewise in *Thomas [v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988)]*,* the issue was whether the trial court's decision to dismiss without leave to amend was proper, not whether the trial court should have permitted amendment post-dismissal.

> The Eleventh Circuit clearly and correctly stated the correct standard in a recent case, *United States ex [r]el. Atkins v. McInteer,* 470 F.3d 1350, 1361 n. 22 (11th Cir. 2006): "Fed. R. Civ. P. 15(a) has no application once the district court has dismissed the complaint and entered final judgment for the defendant. Post-judgment, the plaintiff may seek leave to amend if he is granted relief under Rule 59(e) or Rule 60(b)(6)." (citations omitted). This court, unlike the *Dussouy* court, was not asked to amend the Complaint before dismissal. Reconsideration is therefore limited to whether dismissal was appropriate. At most, the court may consider whether its decision not to grant Plaintiffs leave to amend *sua sponte* was clearly contrary to Rule 15.

*Robbins v. Scana Energy Mktg., Inc*., 2008 WL 7724172, at *3 (N.D. Ga. July 30, 2008).

29

The other cases that Plaintiffs cite similarly do not support their argument. Plaintiffs cite *Vanderberg v. Donaldson* for the proposition that "Rule 15(a)'s abuse of discretion standard applies when a plaintiff seeks to amend an unamended complaint after entry of judgment by moving to vacate a dismissal pursuant to Fed. R. Civ. P. 59(e)." 259 F.3d 1321, 1326 (11th Cir. 2001). But *Vanderberg* says nothing about whether the threshold requirements of Rule 59 or Rule 60 ***also*** must be satisfied. Indeed, *Vanderberg* expressly declined to decide whether the Rule 60(b) standard for relief from a judgment applied, reasoning that it was not necessary to reach that question because "Plaintiff cannot even satisfy the Rule 15(a) abuse of discretion standard, much less the more stringent Rule 60(b) standard." *Id.* Several of the other cases Plaintiffs cite also suffer from this same deficiency—this Court reviewed the district court's Rule 15 futility analysis but did not address whether the plaintiff was also required to satisfy Rule 59 or Rule 60. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (relying on *Thomas*); *Martinair Holland, N.V. v. Benihana, Inc.*, 780 F. App'x 772, 776-77 (11th Cir. 2019) (reversing a district court's decision because when the district court assessed futility, it neglected to address one of the plaintiff's amended claims, which precluded the appellate court from fully reviewing the merits of the decision); *Higdon v. Fulton County*, 746 F. App'x 796, 801 (11th Cir. 2018) (affirming the district court's dismissal of a pro se plaintiff's complaint "in its

entirety" because any amendment would be futile but not addressing whether the plaintiff could also meet Rule 59 or 60).

In another case Plaintiffs cite, the plaintiff did not even file a motion for relief from judgment. In *Uzuegbunam v. Preczewski*, 781 F. App'x 824 (11th Cir. 2019), *reversed and remanded on other grounds,* 141 S. Ct. 792 (2021), the plaintiffs did not file a motion for relief from a judgment—they appealed the denial of their request for leave to amend made within their response to the defendants' motion to dismiss. The Eleventh Circuit simply held that the district court did not abuse its discretion in denying a request for leave to amend made within a motion to dismiss opposition. *Id.* at 832-33. In addressing the plaintiffs' argument that the district court abused its discretion by entering judgment "so soon" after its order on the motion to dismiss, the Court noted that if the plaintiffs "were precluded from proceeding under Rule 15" because the district court entered judgment immediately after granting the defendant's motion to dismiss, the plaintiffs "could still have moved under Rule 60(b) or 59(e) on the ground they could rectify the pleading issues in the First Amendment [sic] Complaint through further proposed amendments." *Id.* at 833. But the Eleventh Circuit did not say anything about what the plaintiffs would have to show if they were to move for relief under Rule 59 or 60.

In two other cases, the Eleventh Circuit remanded based on the district court's failure to provide a reason for its denial, which is far from the case here. *Thomas v.*

31

*Farmville Mfg. Co.,* 705 F.2d 1307, 1307-08 (11th Cir. 1983) ("in the absence of a declared or apparent reason, an outright refusal to grant leave to amend is an abuse of discretion"); *Pioneer Metals, Inc. v. Univar USA, Inc.*, 168 F. App'x 335, 337 (11th Cir. 2006) (remanding because the district court's "grounds for denial [were] not apparent or obvious"). Here, the District Court thoroughly explained the basis for its decision in a detailed 12-page order that included a thorough review of the applicable Eleventh Circuit precedent. *See* Doc. 39.

Finally, Plaintiffs cite *Czeremcha v. International Ass'n of Machinists and Aerospace Workers,* 724 F.2d 1552 (11th Cir. 1984), for the proposition that post-dismissal leave to amend should be freely granted. But Plaintiffs ignore the factual nuance of the *Czeremcha* case. There, the district court granted the defendant's motion to dismiss, but "in its order dismissing the complaint did not state that it also was dismissing the action." *Id.* at 1555. The Eleventh Circuit concluded that because the dismissal of the complaint was *not* a dismissal of the action, the district court should have considered whether amendment should be permitted. *Id.* & 1556 n.9 ("Because we find that a dismissal of the complaint is not tantamount to a dismissal of the action unless the court so specifies, Rule 59(e) or 60(b) would apply only once the action is dismissed."). Here, there is no doubt that the dismissal of the complaint was a dismissal of the action—the Court expressly directed the Clerk to close the case. Doc. 33 at 20. Thus, because the action has been dismissed,

*Czeremcha* confirms that "Rule 59(e) or 60(b) would apply" to subsequent attempts to amend the Complaint.  *See* 724 F.2d at 1556 n.9.

### 3. *Accepting Plaintiffs' Position Would Unnecessarily Prolong Litigation.*

Requiring a plaintiff to satisfy Rule 59 or 60's stringent requirements when seeking leave to amend a complaint post-judgment is not only required by this Court's precedent; it is supported by strong policy considerations.  As a leading treatise has explained, allowing a plaintiff to amend so long as he could satisfy Rule 15's liberal standard even after judgment has been entered "would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation."   6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1489, pp. 692-94 (1990).  As a district court in this circuit has explained, a plaintiff should "take[] her best shot from the get-go; she should not . . . wait[] for [the defendant] and the Court to have worked through her pleading before bothering to inform all involved that she had a much better pleading in her quiver in case things went badly for her." *Taylor v. Royal Caribbean Cruises Ltd*., 2021 WL 148797, at *2 (S.D. Fla. Jan. 15, 2021), *aff'd*, 2021 WL 3502626 (11th Cir. Aug. 10, 2021) (per curiam).  Allowing Plaintiffs to "wait and see if their amended complaint was rejected by the district court before being put to the costs of filing a second amended complaint" would "lead to delays, inefficiencies, and wasted work." *ACA Fin. Guar.*

33

*Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008); *see also Pugh v. Tribune Co.*, 521 F.3d 686, 698 (7th Cir. 2008) ("Courts have rejected the argument that the plaintiffs now make – namely, that they were entitled to wait and see what the district court said before making any changes to the complaint – because it would impose unnecessary costs and inefficiencies on both the courts and party opponents."). This Court has recently recognized these same policy considerations by holding that a plaintiff who seeks leave to amend after judgment has been entered must do more than simply "rel[y] on 'previously unsubmitted evidence'" where the party has not shown "'that the evidence was not available during the pendency of the motion.'" *CMR Constr. & Roofing, LLC v. UCMS, LLC,* 2022 WL 3012298, at *8 (11th Cir. July 29, 2022) (quoting *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997)). Plaintiffs have not—and cannot—do so here. *See* note 15, *infra*.

Perhaps in light of these strong policy considerations, district courts in this Circuit routinely require plaintiffs who seek leave to amend a complaint after judgment has been entered to satisfy Rule 59 or 60's requirements. *See, e.g.*, *Freeman v. Willie A. Watkins Funeral Home of Riverdale, Inc*., 2017 WL 836056, at *1-2 (N.D. Ga. Mar. 3, 2017) (a plaintiff must first show that reopening the case is appropriate under Rule 59(e) before Rule 15(a)'s "liberal policy" of allowing amendments should apply); *Shuler v. Strange*, 2017 WL 748515, at *2-3 (N.D. Ala. Feb. 27, 2017) (holding that the plaintiffs "have not unlocked the door for seeking

Rule 15(a) post-judgment relief through either the Rule 59(e) or Rule 60(b) key" and "the Eleventh Circuit has explained that granting leave to amend under Rule 15(a) is not appropriate post-judgment unless a party has obtained relief from that judgment under Rule 59(e) or Rule 60(b)"), *aff'd*, 718 F. App'x 825 (11th Cir. 2017) (per curiam).  Many of this Court's sister Circuits also require Plaintiffs to satisfy Rule 59 or 60 in these circumstances.  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 136 (2d Cir. 2020) (affirming the district court's denial of the plaintiffs' Rule 59(e) and Rule 60(b) motions, and therefore declining to reach the district court's "alternative holding" under Rule 15 that amendment of the complaint would be futile); *Leisure Caviar LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (a party seeking to amend post-judgment "must shoulder a heavier burden" and meet both Rules 59 or 60 *and* Rule 15 because "[i]f a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision'"); *Amendola v. Bayer*, 907 F.2d 760, 765 n.4 (7th Cir. 1990) (requiring a plaintiff to first re-open judgment under Rule 59(e) or 60(b) and then request leave to amend under Rule 15); *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 743 (8th Cir. 2014) ("Leave to amend will be granted if it is consistent with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief."); *3WL, LLC v. Master Protection, LP*,

851 F. App'x 4, 8 (9th Cir. 2021) ("We need not reach that Rule 15 issue on appeal, since ProPortion again has failed to argue why the district court should have vacated the judgment."); *Cooper v. Shumway*, 780 F.2d 27, 29 (10th Cir. 1985) (district court did not abuse its discretion in denying post-judgment leave to amend because the plaintiff failed to meet Rule 59(e)'s time requirement or 60(b)'s substantive requirements as the allegations in the amended complaint could have been raised in the original complaint); *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004) ("[O]nce a final judgment has been entered, a court cannot permit an amendment unless the plaintiff first satisfies Rule 59(e)'s more stringent standard for setting aside the judgment. Since the court declined to set aside the judgment under Rule 59(e), it properly concluded that Ciralsky's motion to amend under Rule 15(a) was moot.") (alterations and citations omitted).

Plaintiffs' only answer to these strong policy considerations and this mountain of case law is to point to the liberal pleading standard set forth in Rule 8. App. Br. at 41. But Rule 8's liberal pleading standard does not support the "wait and see" approach that Plaintiffs chose to take here. All of the new allegations in Plaintiffs' Second Amended Complaint are allegations that they could have made earlier.[15]  If

---

[15] The new factual allegations in Plaintiffs' proposed Second Amended Complaint relate to an April 2019 blog post related to cybersecurity, a March 2018 SEC filing, articles from 2019 and 2020 related generally to cybersecurity, and an August 5, 2021 Privacy Notice. *See* Doc. 35-7 at 11-15, 50. Each of these documents predates the deadline to amend the pleadings set forth in the Court's scheduling order, and

Plaintiffs believed that Defendants' motion to dismiss was meritorious, Plaintiffs could have responded by filing a motion for leave to amend to correct the deficiencies Defendants had identified.[16]  Instead of doing that, though, Plaintiffs made a tactical decision to respond to Defendants' motion to dismiss, asking the District Court to expend its limited resources to evaluate the sufficiency of Plaintiffs' First Amended Complaint.  The District Court did exactly that and concluded that Plaintiffs failed to state a plausible claim to relief.  Plaintiffs' miscalculation about how the District Court would rule "was a tactical choice that does not warrant leave to amend months after the deadline." *Taylor*, 2021 WL 148797, at *2.

### 4. The District Court Properly Concluded that Plaintiffs Have Not Satisfied Rule 59(e) or 60(b)'s Requirements.

With the correct framework in mind, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (alteration and internal quotation marks omitted).  A motion for relief from a judgment under Rule 60(b) presents an even steeper hurdle—a plaintiff must show "extraordinary or exceptional circumstances [that] create a substantial danger that the underlying judgment was unjust." *Bank of Am., N.A. v. Jones*, 2020 WL 10070318, at *1 (N.D. Ga. May 6,

---

the blog post, SEC filing, and articles predate both Plaintiffs' filing of the original Complaint and Plaintiffs' filing of their first Amended Complaint.

[16] In fact, Plaintiffs were clearly aware of this choice, as they responded to Americold's first motion to dismiss by filing an amended complaint.

2020) (alteration and internal quotation marks omitted).  Plaintiffs make no effort on appeal (or in the District Court) to argue they met the stringent requirements of Rules 59(e) or Rule 60(b).  They do not—and could not—argue that there is newly-discovered evidence that supports their claim, that the Court committed a manifest error, or that there are any extraordinary circumstances that would render the Court's judgment against them unjust.  Their failure to make these arguments requires affirmance.  *St. Louis Condo. Ass'n v. Rockhill Ins. Co.*, 5 F.4th 1235, 1246 (11th Cir. 2021) (affirming the denial of a Rule 59(e) motion where "the [plaintiff] has not even attempted to demonstrate there is newly-discovered evidence or manifest errors of law or fact") (internal quotation marks and citation omitted).

### b. The District Court Acted Well Within Its Discretion in Holding that Plaintiffs Did Not Show Good Cause for Allowing Their Untimely Request to Amend.

Plaintiffs also argue that the District Court abused its discretion in holding that they were required to show good cause for seeking to amend their Amended Complaint after the deadline for amending the pleadings.  This argument is meritless.  On July 7, 2021, the parties submitted and agreed to a Joint Preliminary Report and Discovery Plan ("JPRDP"), which included a deadline of August 6, 2021, for amendment of pleadings.  Doc. 19 at 7 ("Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless

otherwise permitted by law.").  As required by Local Rule 16.2 of the Northern

District of Georgia, the parties' JPRDP was completed using the form provided by

the Court.  The last page of that form includes a Scheduling Order for the Court to

enter, which reads:

> Upon review of the information contained in the Joint Preliminary
> Report and Discovery Plan form completed and filed by the parties, the
> Court orders that the time limits for adding parties, amending the
> pleadings, filing motions, completing discovery, and discussing
> settlement are as set out in the Federal Rules of Civil Procedure and the
> Local Rules of this Court, except as herein modified.

Two days after the Parties submitted the JRPDP, the District Court entered an

Order adopting it.  That Order is a one-page document that repeats the language set

forth above, and the District Court added a notation stating that "*[t]he parties'*

*request for an 8-month discovery track is GRANTED*."  Doc. 20.  The Court's docket

entry further reflects that the District Court "APPROV[ED] [Doc.] 19 [the parties']

Joint Preliminary Report and Discovery Plan."  *See* Appellants' Appendix at 9

(Docket).  Thus, the scheduling order entered by the District Court and agreed to by

the Parties set a deadline of August 6, 2021, to amend the Complaint.

It is undisputed that Plaintiffs' request for leave to amend was made well after

this Deadline.  Plaintiffs requested leave to file their Second Amended Complaint

on February 16, 2022, more than *six months* after the deadline the Parties had

proposed, and the Court had adopted.  Thus, Plaintiffs' belated request to amend the

pleadings was only allowed if they could demonstrate "good cause" for their delay.

Fed. R. Civ. P. 16(b)(4); *see Sekisui SPR Am., LLC v. 9413-2990 Quebec Inc.*, 2021 WL 3087657, at *3 (N.D. Ga. Jan. 11, 2021) (citing identical language from the JPRDP and concluding the party seeking amendment must show good cause where the motion to amend was filed "nearly four months after the deadline").

Plaintiffs attempt to get around the deadline that they agreed to by arguing that—despite the clear language in the District Court's docket entry to the contrary—the District Court did *not* adopt the JPRDP. There is no merit to this argument. As set forth above, the District Court adopted the exact scheduling order included in the JPRDP, it styled its docket entry as approving the JPRDP, and, lest there be any confusion, the District Court told Plaintiffs exactly what it meant: "The Court entered a scheduling order [20] adopting the parties' joint preliminary report and discovery plan [19]. The joint preliminary report and discovery plan set a thirty-day deadline for amending the pleadings." Doc. 39 at 11. The District Court also reviewed the very cases Plaintiffs cite on appeal, noting that in those cases (unlike this one), the district courts had expressly *not* adopted the JPRDP. *Id.* The District Court was well within its discretion to enforce its prior order.

In a last-ditch effort to save their motion, Plaintiffs make two arguments. First, they argue that even if they had failed to adhere to the Scheduling Order, the District Court had discretion to allow the amendment anyways. App. Br. at 45. While that may be true, Plaintiffs' argument turns the very concept of discretion on

its head.  Plaintiffs cite no case to support that the District Court's discretion required it to excuse a failure to meet a scheduling order or that the failure to exercise that discretion is, itself, an abuse of discretion.  *See AMG Trade & Distrib., LLC v. Nissan N. Am. Inc.,* 813 F. App'x 403, 409 (11th Cir. 2020) (district court does not abuse its discretion denying leave to amend after scheduling order entered where the "claimed new evidence reveals nothing more than what [the plaintiff] had available to it even before it filed suit") (alterations and internal quotation marks omitted).

Second, Plaintiffs argue that they have satisfied the "good cause" standard because three of the four Plaintiffs—who were named for the first time in the First Amended Complaint—had not yet amended their claims.[17]  But the District Court correctly held that the standard is not whether Plaintiffs had established good cause *to amend*, but rather whether they had established good cause *for failing to meet the deadline set forth in the Court's scheduling order*.  *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed

---

[17] Plaintiffs repeatedly argue that, generally speaking, plaintiffs should receive at least one opportunity to amend before dismissal.  But Plaintiffs' suggestion that they lacked a "chance to cure deficiencies," App. Br. at 32, is simply false.  When the newly-added Plaintiffs were named in the First Amended Complaint, Plaintiffs' counsel had the benefit of Americold's original motion to dismiss arguments in crafting their allegations.  Plaintiffs cite no authority for the proposition that newly-added plaintiffs in a subsequent complaint must also get an extra opportunity to amend.  Accepting Plaintiffs' position would incentivize litigants to repeatedly add new plaintiffs every time a defendant moves to dismiss, which would prolong litigation, consume scarce judicial resources, and needlessly inflate litigation expenses.

41

after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment was proper under Rule 15(a)."). To meet the good cause standard under Rule 16(b), Plaintiffs must show diligence and they cannot do so when their only explanation for the delay is simply that they made a decision to "wait and see" what the District Court thought of their complaint. *Donley v. City of Morrow, Ga*., 601 F. App'x 805, 810-11 (11th Cir. 2015) ("A plaintiff lacks diligence when, prior to the scheduling order deadline, he either (1) had full knowledge of the information with which he later sought to amend his complaint, or (2) failed to seek the information he needed to determine whether to amend the complaint."); *Sosa*, 133 F.3d at 1418 ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension.") (internal quotation marks omitted); *Stalzer v. S. Golf Partners, LLC v. Fed. Deposit Ins. Co.*, 2012 WL 13006240, at *4 (N.D. Ga. June 21, 2012) (good cause standard not met when the FDIC failed to file its proposed amended pleading until four months after the joint preliminary report and discovery plan was filed and did not explain "why it could not have discovered the reason it wanted to amend prior to the deadline"). Plaintiffs have not even attempted to explain why they could not have discovered the reason they wanted to amend before the deadline set forth in the Scheduling Order entered by the Court. Accordingly, the District Court acted squarely within the bounds of its substantial

discretion in denying Plaintiffs' untimely request for leave to amend their Complaint.

### c. *Plaintiffs Did Not Meet Rule 15's More Liberal Standard for Pre-Judgment Amendment.*

Plaintiffs briefly argue that their proposed amendment should be allowed because in their estimation it meets Rule 15's standards. Consideration of this issue is not necessary to resolve this appeal, given the multiple bases for affirming the District Court's decision and the patent inapplicability of Rule 15 after judgment is entered absent a basis for reopening the litigation under Rules 59 and 60. Nevertheless, Plaintiffs are once again incorrect—their revisions to the Amended Complaint still do not state a plausible claim to relief.

As referenced above, the District Court dismissed Plaintiffs' negligence claim because it held that there was no duty to safeguard personal information from a criminal ransomware attack under any of the relevant state laws. *See* Argument Section I.b.1, *supra*. Plaintiffs' proposed revisions cannot overcome the current state of the law in all of the relevant states. Plaintiffs also cannot plead around the economic loss rule, which prevents them from recovering in tort for the economic injuries that they seek to recover here. *See* Argument Section I.b.3, *supra*. But even if Plaintiffs could clear those two insurmountable hurdles, the new allegations Plaintiffs seek to add still fall short of the specific allegations that the *Purvis* court found supported a duty under a foreseeability theory:

43

- Plaintiffs cite an April 2019 employee-drafted article to suggest that logistics companies were at risk of cyberattacks and this type of ransomware attack was foreseeable.  At most, however, the article states that logistics companies, like every other company, are not immune from cyberattacks.  Further, the article was focused on the threat posed by potential cyberattacks (of varying types—including using weak passwords, clicking unknown links, inserting unknown USBs) to *customer* data.  It says nothing about whether it is foreseeable that a logistics company would fall victim to a ransomware attack impacting employee data.

- Plaintiffs point to a March 2018 SEC filing in an annual report wherein Americold stated that a cybersecurity attack poses risks to the business.  But this general statement does not identify any particularized risk to Americold, nor does it identify any particular type of cyberattack.  Moreover, courts have rejected attempts to impose a duty based on precisely these types of generic statements in SEC filings. *See, e.g.*, *In re Dredging Limitation Actions Consol. Litig.*, No. 06-8676, 2008 WL 11439340, at *10 (E.D. La. June 12, 2008) (holding that "rather standard SEC filings . . . do not persuade the Court that . . . claimants had a duty").

- Plaintiffs cite to a series of "readily available" warnings from articles and websites.  But these alleged warnings add nothing to the generic statements Plaintiffs included in their prior Amended Complaint and do not suggest that Americold had cause to be on guard for a ransomware attack impacting employee

data.  Additionally, Plaintiffs staked the relevance of these reports on their allegation that "because Defendant had a duty to protect" the information, "Defendant should have accessed readily available" information about potential threats.  Doc. 35 at 12 (alteration omitted).  This is a purely circular argument—Plaintiffs cannot support the existence of a duty by arguing Americold should have reviewed these articles because it had a duty.

Granting Plaintiffs leave to amend their claim for breach of implied contract would also be futile.  As discussed above, the District Court correctly held that Plaintiffs had not stated a claim for breach of implied contract because they had not "allege[d] facts to allow a plausible inference that Americold intended to bind itself to protect such Plaintiff's information."  Doc. 33 at 20.  Plaintiffs' proposed Second Amended Complaint does not cure this deficiency.  It says nothing about any conversations or agreements that any individual Plaintiff had with Americold about the protection of their data.  Plaintiffs merely cite a Privacy Notice from August 2021, in which they claim Americold "promised" to implement certain security measures.  App. Br. at 47.  But even if that Privacy Notice could constitute a contract, it cannot possibly evidence Americold's intent "to bind itself to protect the PII, including Social Security numbers, that each Plaintiff submitted to Defendant *in applying for employment with Defendant*" as Plaintiffs claim because it post-dates the date on which each Plaintiff applied for employment at Americold by several

years.[18] Doc. 35-1 (Proposed Second Amended Complaint) ¶ 168 (emphasis added).

Plaintiff Rogers worked for Americold "in or around 2011"; Plaintiff Sheffler

worked for Americold "in or around November 2019"; Plaintiff Baugh worked for

Americold "for approximately three weeks in or around May 2013"; and Plaintiff

Goss worked for Americold "from approximately 2012 to 2014."  Doc. 16 (Am.

Compl.) ¶¶ 63, 73, 82, 93.  Plaintiffs do not explain how a privacy policy that took

effect in August 2021 says anything about any purported agreement each of them

made with Americold in 2011, 2012, 2013, or 2019.

Finally, Plaintiffs ignore that undue delay is, itself, a basis to deny leave to

amend under Rule 15.  For all the reasons discussed supra regarding Rule 16's good

cause standard, Plaintiffs cannot meet their burden of establishing that they did not

unduly delay in seeking leave to amend the Complaint.  *Maynard v. Bd. of Regents*

*of Univs. of Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (finding "no good reason

---

[18] Plaintiffs previously alleged only that they provided their personal information to Americold "as a condition of employment," not as part of their employment application.  Doc. 16 (Am. Compl.) ¶ 1.  Plaintiffs' new addition is nothing more than a strained attempt to fit within the rubric of the privacy policy they attach to the proposed Second Amended Complaint, which applies only to "individuals outside" Americold, including "applicants for employment."  Doc. 35-6 at 1.  This Court should not countenance Plaintiffs' gamesmanship. "[T]he federal rules do not allow parties to litigate the merits of their factual contentions and then change those factual contentions upon receiving an unfavorable decision," and is grounds for denying Plaintiffs' motion. *Marchelletta, v. Bergstrom*, 2017 WL 5505301, at *2 (N.D. Ga. Feb. 15, 2017), *aff'd*, 752 F. App'x 724 (11th Cir. 2018).

why" the plaintiff could not have sought amendment earlier because the basis of the claim was known at the outset).

## **CONCLUSION**

In sum, the District Court correctly dismissed Plaintiffs' negligence and breach of implied contract claims and did not abuse its discretion in denying Plaintiffs' request for post-judgment relief.  For the reasons set forth herein, the District Court's decisions should be affirmed.

Dated:  September 28, 2022  By: */s/ Kristine M. Brown*
               KRISTINE MCALISTER BROWN
               Georgia Bar Number 480189
               GAVIN REINKE
               Georgia Bar Number 159424
               M. ASHLEY MILLER
               Georgia Bar No. 330929
               **ALSTON & BIRD LLP**
               1201 West Peachtree Street
               Atlanta, Georgia 30309-3424
               Telephone: 404-881-7000
               Facsimile: 404-881-7777
               kristy.brown@alston.com
               gavin.reinke@alston.com
               ashley.miller@alston.com

               *Attorneys for Appellee Americold Realty Trust*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.    Pursuant to Fed. R. App. P. 32(a)(7)(B), I hereby certify that this document complies with the required word limit as it contains 11,951 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.    Pursuant to Fed. R. App. P. 32(a)(5) and (6), I hereby certify that this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  September 28, 2022        */s/ Kristine M. Brown*
                                Kristine M. Brown

                                *Attorney for Appellee Americold Realty Trust*

48

## **CERTIFICATE OF SERVICE**

I certify that on September 28, 2022, I caused the foregoing to be served upon

all counsel of record by and through the Court's CM/ECF system.

*/s/ Kristine M. Brown*
Kristine M. Brown

*Attorney for Appellee Americold Realty Trust*